Igor Harris (SBN 335884)
Sentinel Law Group
4645 Cass St Ste 102B
San Diego, CA 92109
Telephone: 858-289-2742
Email: igor@harrislawsd.com
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IHOR DUB and
OLESIA PANASIUK,

Plaintiffs,

v.

Markwayne MULLIN, Secretary, Department of Homeland Security; Joseph B. EDLOW, Director, U.S. Citizenship and Immigration Services; Safet MARKE, Field Office Director, Brooklyn Field Office, U.S. Citizenship and Immigration Services; *in their official capacities*; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and U.S. DEPARTMENT OF HOMELAND SECURITY,

Defendants.

CASE NO.: 1:26-CV-05348-JAM

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## PRELIMINARY STATEMENT

Thirty days from now, by operation of a statute Defendants do not dispute, Plaintiffs will permanently lose the opportunity to become lawful permanent residents of the United States. Nothing stands between them and that outcome except a decision Defendants have already told them, in writing, is the only thing left to make.

Plaintiffs Ihor Dub and Olesia Panasiuk are a married couple from Ukraine, lawfully present in this country. Mr. Dub was selected in the DV-2026 diversity visa lottery. They filed their applications, paid $2,880 in fees, gave fingerprints, answered a Request for Evidence, and

sat for interviews at the Brooklyn Field Office on May 1, 2026. That day USCIS handed them a notice signed by the Field Office Director stating that their cases were "being held for review" and that "USCIS does not require any further information or documents from you." One hundred seventeen days have passed. No decision has issued. No further evidence has been requested. No further interview has been scheduled.

The explanation is a matter of public record. On December 19, 2025, USCIS issued Policy Memorandum PM-602-0193, directing officers to hold every pending diversity visa adjustment application and forbidding the issuance of any final decision, whether approval or denial, until further notice. Plaintiffs were interviewed five months into that hold. The officer who interviewed them was not gathering evidence. The officer was prohibited from deciding.

For an ordinary adjustment applicant, an indefinite hold is a hardship. For a diversity visa applicant it is a death sentence for their application. Under 8 U.S.C. § 1154(a)(1)(I)(ii)(II), diversity visa eligibility exists "only through the end of the specific fiscal year." When the DV-2026 year closes on September 30, 2026, Plaintiffs' eligibility terminates, the numbers cease to exist, and, as the D.C. Circuit has now twice held, no court can restore what the statute has taken away. See *Goodluck v. Biden*, No. 21-5263 (D.C. Cir. June 25, 2024) (holding that while the District Court had authority to grant injunctive relief compelling action *before* the end of the fiscal year, but that it could not "override these clear statutory deadlines." A hold without an end date, applied to a benefit with one, is not delay. It is denial by silence.

Plaintiffs ask for something narrow. They do not ask this Court to order that their applications be granted. They do not ask this Court to reserve visa numbers, or to order any action after September 30, 2026, which is precisely the relief *Goodluck* forbids. They ask this Court to order Defendants to **decide**, on the record Defendants have already declared complete,

before the deadline Defendants themselves told Plaintiffs about in writing. That is relief courts grant, it lies within this Court's power, and without it Plaintiffs lose everything.

## STATEMENT OF FACTS

The relevant facts are set out in the Complaint and the accompanying Declarations, and are summarized here.

**The selection and the filings.** Mr. Dub was selected under DV-2026, case number 2026EU2733; Ms. Panasiuk is his derivative. Both submitted Forms DS-260 on June 11, 2025. USCIS received both Forms I-485 on November 28, 2025 and issued receipt notices on December 4, 2025, each identifying the classification as "Diversity Visa Program." Ex. A. Each Plaintiff paid $1,440.

**The hold.** On December 19, 2025, fifteen days after those receipts issued, USCIS promulgated PM-602-0193, "Diversity Visa Holds," directing a hold on all pending diversity visa adjustment applications and barring any final adjudication, whether approval or denial, for the hold's duration. The memorandum states no end date. Ex. C.

**The interview.** On March 27, 2026, USCIS issued call-in notices and a Request for Evidence, directing Plaintiffs to bring the requested evidence to a May 1, 2026 interview. That RFE told Plaintiffs in terms that "only a limited number of visas are available each fiscal year, which ends on September 30, 2026." Plaintiffs appeared, were interviewed, and produced the requested evidence. The officer asked for nothing more.

**The notice.** USCIS hand-delivered a Notice of Interview Results signed by Field Office Director Safet Marke. Ex. B. It checked the box reading: "Your case is being held for review. At this time, USCIS does not require any further information or documents from you." It did not check the box for a non-current priority date, nor the box for transfer to another office.

**The silence.** Nothing has happened since. Plaintiffs obtained a congressional inquiry through Representative Nicole Malliotakis; USCIS responded only that both cases remain pending at Brooklyn. They obtained a congressional inquiry through Representative Nicole Malliotakis; USCIS responded only that both cases remain pending at Brooklyn. On August 19, 2026, the online status for both cases changed to "Interview Was Completed And My Case Must Be Reviewed." No decision has issued.

## ARGUMENT

### I. THE STANDARD.

A party seeking a preliminary injunction must establish likelihood of success on the merits, irreparable harm absent relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Where the injunction sought is mandatory, commanding action rather than forbidding it, the party "must show either a clear likelihood of success on the merits or, perhaps, that the balance of hardships tips even more decidedly in their favor because 'extreme or very serious damage will result from a denial of preliminary relief.'" *H'Shaka v. O'Gorman,* 758 F. App'x 196, 198 (2d Cir. 2019) (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).) Plaintiffs meet that heightened standard.

This motion is brought by order to show cause because the ordinary motion schedule cannot work. Federal Rule of Civil Procedure 12(a)(2) affords the United States sixty days to respond to the Complaint. Sixty days from filing falls well after September 30, 2026, by which date the relief Plaintiffs seek will be impossible to grant. Rule 6(c)(1)(C) and this Court's inherent authority permit a shortened schedule, and Rule 65(a) leaves the timing of a

preliminary injunction hearing to the Court's discretion. Nothing about the government's answer date constrains the Court's power to hear and decide this motion promptly.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### *A. Defendants Have a Clear, Non-Discretionary Duty to Decide.*

Defendants possess discretion over *how* Plaintiffs' applications come out. They possess none over *whether* to reach an outcome. Section 1255(a) authorizes adjustment; 8 C.F.R. § 245.2(a)(5) requires that "[t]he applicant shall be notified of the decision of the director"; and 5 U.S.C. § 555(b) commands that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." Adjudication of a filed application is a "discrete agency action that [the agency] is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Defendants may grant these applications. They may deny them. What they may not do is neither, least of all while a statutory clock runs out on the applicants. A holding contrary would allow Defendants to circumvent 5 U.S.C. § 555(b) by simply refraining from action until action cannot lawfully be taken.

### *B. The Delay Is Unreasonable Under TRAC.*

Courts assess unreasonable delay under the factors of *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Each favors Plaintiffs.

*Rule of reason.* Defendants took every step of adjudication, including receipt, biometrics, RFE, and interview, and then certified in writing that they required nothing further. What followed was not continued processing but a categorical stop. A hold of unbounded duration, imposed after the agency has declared the record complete, is the absence of a rule of

reason, not an application of one. Defendants cannot point to missing evidence, a pending background check, or a scheduling backlog, because their own notice forecloses all three.

*Congressional timetable.* This is the factor that distinguishes this case from the ordinary delay suit. Congress did not merely leave the pace of adjudication to the agency; it fixed the outer boundary of the agency's power to act. 8 U.S.C. §§ 1153(e)(2), 1154(a)(1)(I)(ii)(II). Where Congress provides that a benefit expires on a date certain, an agency's duty to act before that date is not inferred from silence. It is the only reading under which the statute functions at all. Defendants knew the date. Their own Request for Evidence recited it to Plaintiffs.

*Health and welfare; competing priorities.* Plaintiffs stand to lose permanent residence in the United States, permanently. Against that, Defendants can identify no competing priority of comparable weight: the relief sought is the adjudication of two files that sit, complete, in a single field office, and that two officers have already reviewed in person.

*Nature of the interest prejudiced.* The prejudice here is not merely severe but terminal. In the ordinary delay case, a plaintiff who waits eighteen months still receives the benefit in month nineteen. Here, a plaintiff who waits thirty-one days receives nothing, ever. *Goodluck* confirms it: after the fiscal year, courts lack authority to order processing or issuance, and "those applicants without visas are out of luck."

*Impropriety.* Plaintiffs do not allege bad faith and need not. A delay may be unreasonable without being malicious, and *TRAC* expressly so provides.

Defendants will likely argue that 122 days is too short a period to be unreasonable. The argument mistakes the measure twice over. Reasonableness is not counted in days in the abstract; it is counted against the time the statute allows. Defendants have consumed 122 of the days available to them and have 30 left, after which they will lack power to act at all. A delay that consumes the entirety of the period in which relief remains possible is unreasonable

however few days it spans. And the argument assumes a delay that will end on its own. This one will not. Defendants are not working through a queue. They are operating under a policy that forbids them to decide, with no endpoint and no criteria for lifting, while the clock Congress set runs out.

*C. PM-602-0193 Is Unlawful as Applied to Applicants Facing Statutory Expiration.*

Independently, the policy that produced this delay cannot stand. PM-602-0193 is final agency action: it consummates the agency's decision-making on whether to adjudicate diversity visa adjustment applications, and it determines rights, because it forbids any decision on Plaintiffs' applications.

It is contrary to law because its necessary operation is to defeat the statute it administers. An indefinite suspension of adjudication, applied to a benefit Congress made available for one fiscal year only, does not postpone the benefit; it abolishes it for everyone the hold touches. An agency has no authority to adopt a policy that, by its own terms, guarantees the extinction of the statutory rights it is charged with administering.

It is arbitrary and capricious because it reflects no reasoned decision-making on the question that matters. The memorandum does not acknowledge that diversity visa eligibility expires. It does not explain why individualized vetting, which USCIS performs in every other category, including for applicants from countries of far greater security concern, was inadequate here. It does not weigh the reliance interests of applicants who had already filed and paid. It sets no endpoint and no criteria for lifting.

And whatever justification the memorandum once had has since been overtaken. On March 30, 2026, USCIS announced that it had completed its review of screening and vetting

practices. Maintaining a hold after the review it was created to permit has concluded is arbitrary on the agency's own account of itself.

This reasoning is not novel. In *Dorcas International Institute of Rhode Island v. USCIS*, No. 1:26-cv-00132 (D.R.I. June 5, 2026), the court declared unlawful and vacated four USCIS adjudication-hold policies under the Administrative Procedure Act, entered partial final judgment on June 11, and directed the government to report its compliance within twenty-four hours. The First Circuit declined to stay that vacatur on August 14, 2026. PM-602-0193 was not among the memoranda before that court, and it remains in force. But the defect *Dorcas* identified is the defect here: an open-ended suspension of adjudication, adopted without reasoned consideration of its consequences for the applicants it sweeps in. That reasoning applies with greater force to Plaintiffs, whose eligibility, unlike that of the *Dorcas* plaintiffs, expires by statute while the hold runs.

## III. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT RELIEF.

Irreparable harm is often the most contested element of a preliminary injunction. Here it is the clearest. On September 30, 2026, Plaintiffs' eligibility terminates by force of statute. The DV-2026 numbers are not carried forward; they lapse. No damages remedy exists, because no damages can restore an immigration status Congress has withdrawn. No later ruling can cure the injury, because *Goodluck* holds that after the fiscal year a district court has no authority to order the processing or issuance of a diversity visa.

Nor can Plaintiffs simply try again. Diversity visa selection is by random lottery among millions of entrants. Plaintiffs cannot reapply for what they have lost; they can only hope to be chosen again, an event over which they exercise no control and to which they hold no entitlement.

The harm is also nearer than the statutory date suggests. The Department of State has warned DV-2026 selectees that "visas may become unavailable before" September 30 because the annual numerical limit may be exhausted first. September 30 is a ceiling, not a target.

## IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF.

Where the government is the opposing party, the balance of equities and the public interest merge. Both favor Plaintiffs decisively.

What Plaintiffs stand to lose is permanent and total. What Defendants stand to lose is the ability to defer, for an unspecified further period, a decision on two applications they have already investigated, already interviewed, and already declared complete. Defendants retain every substantive authority they possess: the power to approve, the power to deny, the power to issue a Notice of Intent to Deny, the power to reopen. An order requiring a decision by a date certain takes nothing from Defendants but the option of never deciding at all.

The public interest is not served by an agency collecting $2,880 in fees, conducting a full adjudication, informing applicants in writing that nothing further is required of them, and then allowing the benefit to expire without a word. It is served by the timely and lawful administration of the statutes Congress enacted.

## V. THE RELIEF REQUESTED IS NARROW AND WITHIN THIS COURT’S POWER.

Plaintiffs are mindful of the limits the case law imposes, and have framed their request to respect them.

*Goodluck* holds that a district court may not order the processing or issuance of diversity visas *after the fiscal year has ended*, including through reservation of numbers. Plaintiffs seek no such relief. They ask for an order operative entirely *before* September 30, 2026, a category *Goodluck* expressly did not disturb. The preliminary injunction underlying that appeal had

required good-faith expeditious processing during the fiscal year, and no part of the D.C. Circuit's decision disapproved it.

Nor do Plaintiffs ask this Court to direct an outcome. Mandamus compels action, not result. The order Plaintiffs propose requires Defendants to adjudicate and to give notice of the adjudication; it leaves the substance of the decision entirely to Defendants' judgment. That is the same relief granted in the September 2025 diversity visa litigation in the District of Columbia, where the court ordered the government to complete adjudication of the named plaintiffs' applications by October 1, 2025 while making clear that the agency was not required to issue the visas, only to finish evaluating them.

A date certain is essential. An order to adjudicate "promptly" or "expeditiously" would be unenforceable in the time remaining and would invite precisely the drift that brought Plaintiffs here. Plaintiffs respectfully propose **September 22, 2026**, which leaves Defendants four weeks from filing and preserves a margin before the statutory deadline for service of notice and any ministerial steps.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue the accompanying Order to Show Cause, set an expedited briefing schedule, and thereafter enter a preliminary injunction directing Defendants to adjudicate Plaintiffs' Forms I-485 and serve notice of the decisions on or before **September 22, 2026**.

Dated: August 31, 2026

Respectfully submitted,

Igor Harris (CA SBN 335884)
Attorney for Plaintiffs